**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

**LADARIUS R. WASHINGTON,**

> **Petitioner,**

**vs.**                                                      **Case No. 4:12cv72-WS/CAS**

**MICHAEL D. CREWS, Secretary,**
**Florida Department of Corrections,**[1]

> **Respondent.**

_____/

## REPORT AND RECOMMENDATION TO DENY § 2254 PETITION

On February 8, 2012, Petitioner LaDarius R. Washington, proceeding pro se,

filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, and a supporting

memorandum.  Doc. 1.  On October 22, 2012, Respondent filed a response, with

exhibits.  Doc. 16.  Petitioner filed a reply on November 8, 2012.  Doc. 17.

The matter was referred to the undersigned United States Magistrate Judge for

report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida

Local Rule 72.2(B).  After careful consideration of all issues raised, the undersigned has

---

[1]The Clerk of Court shall substitute Michael D. Crews as Secretary of the Florida Department of Corrections in place of Kenneth S. Tucker.  Michael D. Crews became Secretary on December 17, 2012, and shall be automatically substituted pursuant to Federal Rule of Civil Procedure 25(d).

determined that no evidentiary hearing is required for disposition of this matter.  *See*

Rule 8(a), R. Gov. § 2254 Cases in U.S. Dist. Cts.  For the reasons stated herein, the

pleadings and attachments before the Court show that Petitioner is not entitled to

federal habeas relief, and the § 2254 petition should be denied.

## State Court Proceedings

By information filed on October 20, 2006, in the Second Judicial Circuit, Leon

County, in case number 06-CF-04011, the State of Florida charged Petitioner LaDarius

R. Washington with four counts, in connection with events that took place on October 9,

2006: (1) battery on a law enforcement officer (Officer R. Roa, Tallahassee Police

Department (TPD)), a third degree felony, in violation of section 784.07(2)(b), Florida

Statutes; (2) resisting a law enforcement officer (TPD Officers R. Finales, R. Roa, S.

Burton, and/or M. Laidler) with violence, a third degree felony, in violation of section

843.01, Florida Statutes; (3) possession of crack cocaine, a third degree felony, in

violation of section 893.13(6)(a), Florida Statutes; and (4) giving a false name to a law

enforcement officer (TPD Officer R. Finales), a first degree misdemeanor, in violation of

section 901.36(1), Florida Statutes.  Doc. 16 Ex. C.  Washington proceeded to a jury

trial on September 27, 2007.  *Id.* Ex. E.  Washington did not testify.  *Id.* at 249.  The jury

found him guilty as charged on all four counts.  *Id.* at 313-15, Ex. F.  On October 5,

2007, the trial court judge adjudicated Washington guilty.  *Id.* Exs. G at 9, H at 104.  On

Counts 1 and 3, the court sentenced him to five (5) years in prison.  *Id.* Ex. G at 9, H at

106.  On Count 2, the court sentenced him as a prison releasee reoffender to five (5)

years in prison.  *Id.* Ex. G at 9, H at 108.  The court directed the sentences on Counts 1,

2, and 3, to run concurrently. *Id.* Ex. G at 9-10, H at 111. On Count 4, the court sentenced him to time served. *Id.* Ex. G at 9, H at 107, 110.

Washington appealed his judgment and sentence to the First District Court of Appeal (DCA), assigned case number 1D07-5730, and filed an Initial Brief raising three points. Doc. 16 Exs. I, L. The State filed an Answer Brief. *Id.* Ex. L. Washington filed a Reply Brief. *Id.* Ex. N. On April 30, 2010, the First DCA affirmed the case per curiam, with no written opinion. *Id.* Ex. O; Washington v. State, 34 So. 3d 8 (Fla. 1st DCA 2010) (table).

On September 27, 2010, Washington filed a pro se motion for post-conviction relief in the state trial court, pursuant to Florida Rule of Criminal Procedure 3.850. Doc. 16 Ex. P. On May 26, 2011, the State filed a response to the Rule 3.850 motion. *Id.* Ex. Q. Washington filed a reply. *Id.* Ex. R. By order rendered August 2, 2011, the state post-conviction trial court summarily denied the Rule 3.850 motion. *Id.* Ex. S. Washington appealed the denial to the First DCA, assigned case number 1D11-4688, and filed a pro se initial brief. *Id.* Exs. T, U. The State filed a notice that it would not file an Answer Brief. *Id.* Ex. V. The First DCA per curiam affirmed the case without an opinion on November 30, 2011, and the mandate issued December 28, 2011. *Id.* Ex. W; Washington v. State, 75 So. 3d 728 (Fla. 1st DCA 2011) (table).

As indicated above, on February 28, 2012, Washington timely filed a § 2254 petition in this Court. Doc. 1. Petitioner raises two grounds, both alleging ineffective assistance of trial counsel:

(1) "Defendant was denied effective assistance of counsel, whereas counsel failed to object to erroneous jury instruction that officers were effecting a lawful execution of legal duty when battery was committed." Doc. 1 at 4.  As supporting facts, Petitioner explains that the "trial judge erroneously instructed [the] jury that officers were effecting a lawful execution of a legal duty" and "[c]ounsel was ineffective for not objecting to the said jury instruction."  *Id.*

(2) "Defendant was denied effective assistance of counsel, whereas counsel failed to request the standard jury instruction 3b(g) justifiable use of non-deadly force."  *Id.*  As supporting facts, Petitioner explains that "defense counsel was ineffective for failing to ask for the jury instruction on excessive force to be included in trial courts rendition to the jury."  *Id.*

Respondent has filed an answer with exhibits.  Doc. 16.  Petitioner has filed a reply. Doc. 17.

## Analysis

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant habeas corpus relief for persons in state custody.  Section 2254(d) provides, in pertinent part:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  *See* <u>Williams v. Taylor</u>, 529 U.S. 362 (2000); <u>Gill v. Mecusker</u>, 633 F.3d 1272 (11th Cir. 2011).

If a state prisoner's habeas petition "includes a claim that has been 'adjudicated on the merits in State court proceedings,' § 2254(d), an additional restriction applies." Cullen v. Pinholster, 131 S.Ct. 1388, 1398 (2011).  The federal court may not grant relief unless the state court's adjudication of the claim:  (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  28 U.S.C. § 2254(d).   "This is a 'difficult to meet' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'"  Cullen, 131 S.Ct. at 1398 (quoting Harrington v. Richter, 131 S.Ct. 770, 786 (2011), and Woodford v. Visciotti, 537 U.S. 19, 24 (2002)).  This Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits."  Cullen, 131 S.Ct. at 1388.

For claims of ineffective assistance of counsel (IAC), the U.S. Supreme Court has adopted a two-part test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Strickland, 466 U.S. at 687.  To demonstrate ineffectiveness, a "defendant must show that counsel's performance fell below an objective standard of reasonableness."  Id. at

688.  To demonstrate prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.*  For this Court's purposes, importantly, "[t]he question 'is not whether a federal court believes the state court's determination' under the <u>Strickland</u> standard 'was incorrect but whether that determination was unreasonable – a substantially higher threshold.'"  <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009) (quoting <u>Schiro v. Landrigan</u>, 550 U.S. 465, 473 (2007)).  "And, because the <u>Strickland</u> standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."  *Id.*  It is a "doubly deferential judicial review that applies to a <u>Strickland</u> claim evaluated under the § 2254(d)(1) standard."  *Id.*

## <u>Ground 1</u>: IAC - Failure to Object to Jury Instruction Language on Effecting Lawful Execution of Legal Duty

In his first ground, Petitioner Washington asserts his trial counsel rendered ineffective assistance by failing to object to an allegedly erroneous jury instruction that the officers were effecting a lawful execution of a legal duty.  Doc. 1 at 4.  As Respondent indicates, Washington presented this ground to the state court as the first claim in his Rule 3.850 motion.  Doc. 16 at 11; *see* Doc. 16 Ex. P at 2-3.  The state post-conviction trial court denied the claim, making the following findings:

> In Ground I, the Defendant claims that defense counsel was ineffective for failing to object to jury instructions pertaining to the charge of Resisting an Officer with Violence.  Specifically, he contends the instruction that affecting an arrest constitutes the lawful execution of a

legal duty was improper.  *Exhibit A – vol. 2, pg. 297.*  Even assuming the failure rendered counsel's performance deficient, the Defendant has failed to demonstrate any prejudice.

In Strickland v. Washington, the Court held that in order to establish prejudice "the defendant must show that thee is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  466 U.S. 668, 694 (1984).  The Court stated that "a reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id.  Here, the Defendant has failed to demonstrate such a probability.  Indeed, in response to a motion to suppress which arose during trial, the Court itself held that the arrest at issue was legal.  *Exhibit A – vol. 2, pg. 207.*  Earlier in the trial, Officer Finales testified that Mr. Washington had provided the name Rashad Gallon and a date of birth.  *Exhibit A - vol. 1, pg. 53.*  According to Officer Finales, Mr. Washington stated he had a Georgia ID card under that name.  *Exhibit A – vol. 1, pg. 54.*  Officer Finales attempted to look up the information provided by Mr. Washington on two occasions, but was unable to locate a record for anyone with the information provided by Mr. Washington.  *Exhibit A – vol. 1, pgs. 55, 57, 59.*  Officer Finales stated that he could not issue a citation without knowing the identity of the person being issued the citation.  *Exhibit A – vol. 1, pg. 56.*  Additionally, as Officer Finales stated in his testimony, it is a crime to provide a false name to a law enforcement officer when the officer is trying to issue a citation.  *Exhibit A – vol. 1, pg. 61.*  In light of the Court's ruling regarding the motion to suppress, and the evidence which supported it, no reasonable probability exists that an objection to the jury instructions would have yielded a different outcome.

Doc. 16 Ex. S at 33-34.  These rulings, affirmed on appeal without opinion, are entitled to AEDPA deference and review is limited to the record before the state court.  *See* 28 U.S.C. § 2254(d); Cullen, 131 S. Ct. at 1402; Richter, 131 S. Ct. at 784-85; Wright v. Sec'y of Dep't of Corr., 278 F.3d 1245, 1255 (11th Cir. 2002).  As explained below, the record supports the state court findings.

As the state post-conviction court explained, the trial court denied a motion to suppress filed by defense counsel and found the police officers has sufficient grounds to

search and arrest Washington.  Doc. 16 Ex. D, E at 206-07.  In the motion to suppress,

defense counsel argued the charges in the case arose after Washington was stopped

for committing the "traffic infraction of 'jay walking,' at which time he was interrogated

and seized by law enforcement" and "'Jay Walking' is not an arrestible offense and

gives no basis for prolonged detention or interrogation but requires the issuance of a

citation and release of the Defendant."  *Id.* Ex. D at 87.

 During the first part of the trial, the officers involved testified regarding the events

leading to the charges.  Specifically, Officer Reynaldo Finales, with the Tallahassee

Police Department, testified that he saw Washington run across Monroe Street – "[h]e

darted off like in a diagonal manner across the street" – in the early morning hours of

October 9, 2006.  *Id.* Ex. E at 48-49.  Officer Finales explained that he then enforced a

pedestrian violation, stopping Washington for committing a pedestrian violation and not

using the crosswalks.  *Id.* at 50.  Officer Finales, in full uniform, got out of his marked

vehicle and asked Washington for his ID, explaining to him that he had committed a

pedestrian violation.  *Id.* at 51.  The officer testified he did not use any show of force or

pull his gun.  *Id.* at 52.  Washington told Officer Finales he did not have any ID on him;

when the officer asked for his name, Washington gave the name "Rashad Gallon."  *Id.*

at 53.  Washington gave his birth date as February 13, 1976, and told the officer he had

a Georgia ID card.  *Id.*  Officer Finales called for routine back-up, using police code

1064, because "[h]e made me nervous enough," and was acting "strangely . . . looking

around and just didn't make me feel comfortable being there by myself" and "something

didn't seem right about him."  *Id.* at 54. After the back-up officers arrived, Officers Roa

and Burton, and later Officer Laidler, Officer Finales ran the name Rashad Gallon with

the birth date given by Petitioner and "got back no record for that name and that

birthday."  *Id*. at 54-55.  Officer Finales wrote a citation for the pedestrian violation but

needed the correct name.  *Id*. at 56.  The officer thought maybe he had gotten the name

wrong, so he went back to Petitioner to double-check and confirmed the name and birth

date.  *Id*. at 56-57.  The officer ran the name again and no record was found.  *Id*. at 57.

The officer asked him for his Social Security number and Petitioner said he did not know

it.  *Id*.  The officer testified that when they later searched Washington, they found his

Social Security card on him, with his full name: Ladarius Rashad Washington.  *Id*. at 58.

The officer told Washington that he needed to give his real name for the citation

because the officer knew he had not provided his real name.  *Id*. at 61.  Washington

started looking around "for an avenue of escape," and the officer told him he was under

arrest.  *Id*. at 61-62.  The officer then grabbed his arm "and he turned and started to run

towards Officer Roa and Officer Burton," about three or four feet.  *Id*. at 62.  Officer Roa

also grabbed him, Officer Finales "had his arm and kind of lost control of his arm

because he was pulling it away," and Officer Laidler also tried to grab him.  *Id*.  Officer

Finales testified that a struggle ensued and "Officer Roa ended up just taking him down

to the ground."  *Id*.    Officer Finales testified that, at one point during the struggle,

Washington swung at him with a closed fist and he moved out of the way to avoid

getting hit.  *Id*. at 65.  Officer Finales used the taser on Washington, and in the struggle,

the taser turned toward the officer and shocked the officer, then fell to the ground, "[a]nd

then we were able to fall on top of him while the taser was still cycling and the taser was

underneath" Washington.  *Id.* at 66.  Officer Finales testified this did not stop

Washington from resisting and the officer grabbed the taser from underneath him.  *Id.* at

67.  Washington continued to struggle and the officer was not able to get handcuffs on

him.  *Id.* at 68.  The officers used their batons, hands, and a leg vice to attempt to get

Washington in handcuffs but these efforts did not work.  *Id.* at 69.  Officer Finales

testied that "[t]he level of their resistance rises the level of our response."  *Id.* at 72.

After "at least three minutes of fighting," the officers were able to get the handcuffs on

Washington.  *Id.*  Officer Finales testified that, during the struggle, he sustained "a few

scratches" on his forearm and Washington bit Officer Roa on the hand.  *Id.* at 92, 125,

127, 136.

     After the officer and some other witnesses had testified, and the State had rested

its case, the trial court considered the motion to suppress.  Doc. 16 Ex. E at 201-02,

206.  The trial court denied the motion, after hearing argument of counsel and making

the following findings:

> MR. EAGEN [defense counsel]: Yes, Your Honor.  The Court was – we
> had the motion to suppress, and if I can deal with that first, Your Honor –
>
> THE COURT: Go right ahead.
>
> MR. EAGEN: – as to whether or not they had sufficient probable cause
> following the traffic stop to basically detain Mr. Washington to the point of
> having to search and everything that followed thereafter.  We would argue
> that normally on a traffic stop, he would be given – it was not an arrestable
> offense, and that he should have been given a citation and then released.
>
>      Obviously the identification part falls into that.  And that kind of puts
> somewhat of a tilt on it of him not giving the correct information.  But we
> would maintain that under the – under the traffic citation, he was not – the
> use that they employed on him with the four officers was beyond what a

traffic stop would involve.  And we would ask that it be – everything that evolved from that would be suppressed.

THE COURT: I would agree with you if that's all it was.  But when he failed to give identification that they could verify, then they had the right to find identification, if they needed to, by taking him into custody.  But, you know, it escalated from there.  But I am going to deny the motion to suppress.  I believe they had sufficient grounds to, not only search him, but to arrest him.

*Id.* Ex. E at 206-07.

At the conclusion of the trial, after closing arguments, the trial court instructed the

jury.  Those instructions included the following as to Counts 1 and 2:

The defendant is charged in Count 1 with, defendant, on October 9th, 2006, did lawfully, knowingly commit a battery upon a law enforcement officer, Tallahassee Police Officer R. Roa, while engaged in the performance of duty and did actually and intentionally touch or strike or cause bodily harm against the officer's will by biting his hand.

To prove the crime of battery on a law enforcement officer, the State must prove the following elements beyond a reasonable doubt. Ladarius R. Washington intentionally touched or struck Tallahassee Police Officer R. Roa against his will.  R. Roa was a law enforcement officer. Ladarius Washington knew he was a law enforcement officer.  R. Roa was engaged in the performance, lawful performance of his duties when the battery was committed.  The Court now instructs you that a Tallahassee police officer is a law enforcement officer.

In Count 2, the defendant is charged with the offense of resisting an officer with violence.  The allegation is, that on October 9th, 2006, the defendant did unlawfully, knowingly and willfully resist, obstruct or oppose a law enforcement officer.  Tallahassee Police Officer Finales, Officer Roa, Officer S. Burton and officer – and/or Officer Laidler <u>in the lawful execution of a legal duty effecting an arrest</u> by offering violence or doing violence to the officer by punching, struggling and/or biting.

To prove the crime of resisting an officer with violence, the State must prove the following elements beyond a reasonable doubt: Ladarius R. Washington knowingly and willfully resisted, obstructed or opposed Tallahassee Police Officer R. Roa by doing to him violence or doing

violence to him.  Pardon me.  By offering to do violence to him – by offering to do him violence or doing violence to him.  At the same time – at the time Officer Roa was engaged <u>in the execution of a legal duty effecting an arrest</u>.  At the time R. Roa was an officer.

The Court now instructs you that every Tallahassee police officer is an officer within the meaning of the law.  The Court further instructs you that <u>effecting an arrest constitutes the lawful execution of a legal duty</u>.

*Id.* Ex. E at 295-97 (emphasis added).  Petitioner Washington takes issue with the inclusion of "in the lawful execution of a legal duty effecting an arrest" language in the jury instructions.  Doc. 1 at 4; Doc. 17 at 4.

As set forth above, the record supports the factual findings made by the state court that the officer was effecting an arrest for providing a false name to law enforcement.  Accordingly, the jury instructions as given were not erroneous.  *See, e.g.*, <u>Carter v. State</u>, 6 So. 3d 106, 107 (Fla. 4th DCA 2009) (explaining trial court has wide discretion in instructing jury, and holding that when defendant is charged with resisting officer with violence and officer was effecting an actual arrest, State is not required to prove lawful execution of legal duty by officer); <u>Motes v. State</u>, 37 So. 3d 301, 302 (Fla. 4th DCA 2010) ("Where violence occurs *during an arrest*, and the defendant is charged with resisting an officer with violence, the State is not required to prove that the arrest was lawful.").  *See also* § 776.051(1), Fla. Stat. (2006) ("A person is not justified in the use of force to resist an arrest by a law enforcement officer who is known, or reasonably appears, to be a law enforcement officer.").  Because the trial court did not err in instructing the jury, defense counsel had no basis to object and cannot be ineffective for failing to do so.

Based on the foregoing, Washington has not shown the state courts' rulings rejecting this claim resulted in a decision that was either (1) contrary to, or involved an unreasonable application of, clearly established U.S. Supreme Court precedent, or (2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d)(1)-(2). This ground should be denied.

### Ground 2: IAC - Failure to Request Standard Jury Instruction on Justifiable Use of Non-Deadly Force

In his second ground, Petitioner Washington asserts his attorney rendered ineffective assistance by failing to request a standard jury instruction on the justifiable use of non-deadly force. Doc. 1 at 4. As Respondent indicates, Washington presented this ground to the state court as the second claim in his Rule 3.850 motion. Doc. 16 at 20; *see* Doc. 16 Ex. P at 3-4. The state post-conviction trial court denied the claim, making the following findings:

> In Ground II, the Defendant claims that defense counsel was ineffective for failing to request jury instructions on justifiable use of non-deadly force with respect to the charge of Battery on a Law Enforcement Officer. In support of this claim, Defendant cites Michel v. State and asserts that the court in that case found that not requesting a justifiable use of non-deadly force instruction constitutes ineffective assistance of counsel. 989 So. 2d 679 (Fla. 4th DCA 2008). Michel is distinguishable from the instance case, however, because in that case, the defendant testified and asserted justifiable use of non-deadly force. *See* Id. Here, the Defendant did not testify to assert justifiable use of non-deadly force, and no other evidence existed to support such an instruction. *See Exhibit A.* Therefore, no instruction was warranted. *Cf.* Mosansky v. State, 33 So. 3d 756, 758 (Fla. 1st DCA 2010) ("The defendant has the burden of presenting sufficient evidence that he acted in self-defense in order to be entitled to a jury instruction on the issue.").

> Additionally, the evidence which was introduced indicates that the officers used appropriate force in defending themselves against the Defendant. *Exhibit A.* Officer Finales testified that a struggle ensued after the Defendant resisted and that during the struggle the Defendant threw his fist at him. *Exhibit A – vol. 1, pgs. 62, 65.* Officer Finales also testified that the Defendant bit Officer Roa. *Exhibit A – vol. 1, pg. 127.* The defense's first witness, Leigh Hansen, stated that she "didn't really see what was going on" and that she could not hear what was going on "when they were talking." *Exhibit A – vol. 2, pg. 214.* Since the evidence in the record does not indicate the Defendant was employing justifiable use of non-deadly force, counsel was not ineffective for failing to request a jury instruction on justifiable use of non-deadly force.

Doc. 16 Ex. S at 34. These rulings, affirmed on appeal without opinion, are entitled to AEDPA deference and review is limited to the record before the state court. *See* 28 U.S.C. § 2254(d); Cullen, 131 S. Ct. at 1402; Richter, 131 S. Ct. at 784-85; Wright, 278 F.3d at 1255. The record supports the state court's findings, particularly the trial testimony of Officer Finales, described in the analysis of Ground 1, *supra*. *See* Doc. 16 Ex. E at 61-72, 126-28. As the state court determined, because the trial record evidence does not reflect that Washington used justifiable non-deadly force in his altercation with the officers, defense counsel was not ineffective for not requesting a jury instruction on justifiable use of non-deadly force. *See, e.g.*, Mosansky, 33 So. 3d at 758.

Indeed, from a review of defense counsel's closing argument, the theory of the defense with regard to this charge was that Washington was reacting in pain to the tasering and did nothing intentionally. Doc. 16 Ex. E at 284-87 ("People react to pain in different ways. . . . Mr. Washington reacts to the tasering. . . . And Mr. Washington does nto react in any type of way aggressive or does not react to try and, you know, fight off

or get away or do whatever he is doing or trying to avoid this pain until the pain is

administered. . . . He reacts to being tased.  He is tased in the back.  He tries to get up.

It is a normal reaction.  He is pushed from behind.  And Mr. Presson said that his arm

goes back in reaction to that in a reflex.  He is being batoned and struck.  And Officer

Roa has his hand near his mouth, and Officer Roa says he gets bit. . . . And I would

submit to you that anything that happened was not intentional because Mr. Washington

was reacting to pain and to being hit and struck by batons for not giving his name. . . .

When you feel pain, you react to pain.  If you put your hand near a hot element on a

stove, you are going to pull your hand away. . . . And I would submit to you that

everything that Mr. Washington did was a reaction to the paid: The pain of the tasering,

the pain of the batons.").  *See* Jones v. State, 137 So. 3d 446, 448 (Fla. 4th DCA 2014)

(quoting trial transcript reflecting defense counsel's characterization of defense

presented to charges of battery on law enforcement officer and resisting an officer with

violence as "involuntary self-defense" where "defense claimed that defendant's actions

were either involuntary due to the pain of the dog bite [from police canine] or made in

self-defense").  "Normally, a claim that injuries were inflicted accidentally will be so

inconsistent with a claim of self defense or defense of another as to logically preclude

an instruction on either defense." Williams v. State, 588 So. 2d 44, 45 (Fla. 1st DCA

1991); *see* Keyes v. State, 804 So. 2d 373, 375-76 (Fla. 4th DCA 2001).  In these

circumstances, defense counsel did not render ineffective assistance in not requesting

jury instruction on the justifiable use of non-deadly force.  *See* Jones, 137 So. 2d at 450

(rejecting claim that defense counsel was ineffective for withdrawing request for jury

instruction on justifiable use of non-deadly force where "[t]he evidence in this case does not show excessive force by law enforcement" and "[d]efense counsel's decision to withdraw the requested instruction was also supported by his unwillingness to admit that the defendant intentionally struck the officer, an admission generally required to support the affirmative defense of self-defense").

Based on the foregoing, Washington has not shown the state courts' rulings rejecting this claim resulted in a decision that was either (1) contrary to, or involved an unreasonable application of, clearly established U.S. Supreme Court precedent, or (2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  *See* 28 U.S.C. § 2254(d)(1)-(2).  This ground should be denied.

## Conclusion

Based on the foregoing, Petitioner LaDarius R. Washington is not entitled to federal habeas relief.  The § 2254 petition (Doc. 1) should be denied.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted).  Therefore, the Court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." The parties shall make any argument as to whether a certificate should issue by objections to this report and recommendation.

Leave to appeal in forma pauperis should also be denied.  *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

## Recommendation

It is therefore respectfully **RECOMMENDED** that the Court **DENY** Petitioner Washington's § 2254 petition (Doc. 1).  It is further **RECOMMENDED** that a certificate of appealability be **DENIED** and that leave to appeal in forma pauperis be **DENIED**. The Clerk shall substitute Michael D. Crews for Kenneth S. Tucker as Respondent.

**IN CHAMBERS** at Tallahassee, Florida, on September 11, 2014.

S/  Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy of this**

report and recommendation.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.